**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| LUNIQUE AGOSTINI, on behalf of herself and all others similarly situated, | : | Case no. 1:24-cv-9061 |
| | : | |
| | : | |
| Plaintiffs, | : | |
| | : | **CLASS ACTION COMPLAINT** |
| v. | : | **AND** |
| | : | <u>DEMAND FOR JURY TRIAL</u> |
| Stance, Inc., | : | |
| | : | |
| Defendant. | : | |
| | : | |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>**INTRODUCTION**</u>

1.  Plaintiff, LUNIQUE AGOSTINI (hereinafter "<u>Plaintiff</u>" or "<u>AGOSTINI</u>"), brings this action on behalf of herself and all other persons similarly situated against Stance, Inc. (hereinafter "<u>Stance</u>" or "<u>Defendant</u>"), and states as follows:

2.  Plaintiff is a visually-impaired and legally blind person who requires screen-reading software to read website content using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer to all people with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20 x 200. Some blind people who meet this definition have limited vision; others have no vision.

3.  Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4.  Plaintiff brings this civil rights action against Stance for their failure to design, construct, maintain, and operate their website to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired persons. Defendant is denying blind and visually impaired persons throughout the United States with equal access to the goods and services Stance provides to their non-disabled customers through https://www.stance.com (hereinafter "Stance.com" or "the website"). Defendant's denial of full and equal access to its website, and therefore denial of its products and services offered, and in conjunction with its physical locations, is a violation of Plaintiff's rights under the Americans with Disabilities Act (the "ADA").

5.  Stance.com provides to the public a wide array of the goods, services, price specials and other programs offered by Stance. Yet, Stance.com contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the website. Thus, Stance excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind and visually-impaired persons to fully and independently access a variety of services.

6.  The blind have an even greater need than the sighted to shop and conduct transactions online due to the challenges faced in mobility. The lack of an accessible website means that blind people are excluded from experiencing transacting with Defendant's website and from purchasing goods or services from Defendant's website.

7.  Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, resizable text and limits the usage of tables and JavaScript, Defendant has chosen to rely on an exclusively visual interface. Stance's sighted customers can independently browse, select, and buy online without the assistance of others. However, blind persons must rely on sighted companions to assist them in accessing and purchasing on Stance.com.

8.  By failing to make the website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9.  Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services, and facilities by making reasonable accommodations for persons with disabilities.

10. Plaintiff browsed and intended to make an online purchase of socks on Stance.com. Despite her efforts, however, Plaintiff was denied a shopping experience like that of a sighted individual due to the Website's lack of a variety of features and accommodations. Unless Defendant remedies the numerous access barriers on its website, Plaintiff and Class members will continue to be unable to independently navigate, browse, use, and complete a purchase on Stance.com.

11. Because Defendant's website, Stance.com, is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Stance's

policies, practices, and procedures to that Defendant's website will become and remain accessible to blind and visually-impaired consumers. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

**JURISDICTION AND VENUE**

12. This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, et seq., and 28 U.S.C. § 1332. This Court also has supplemental jurisdiction over pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 et seq.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 et seq. ("City Law").

13. Venue is proper in this District of New York pursuant to 28 U.S.C. §§ 1391(b)(c) and 144(a) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize, on a number of occasions, the subject Website within this Judicial District.

14. Defendant is registered to do business in Delaware State and has also been conducting business in New York State, including in this District. Defendant purposefully targets and otherwise solicits business from New York State residents through its website. Because of this targeting, it is not unusual for Stance to conduct business with New York State residents. Defendant also has been and is committing the acts alleged herein in this District and has been and is violating the rights of consumers in this District and has been and is causing injury to consumers in this District. A substantial part of the act and omissions giving rise to Plaintiff's claims have occurred in this

District. Most courts support the placement of venue in the district in which Plaintiff tried and failed to access the Website. In Access Now, Inc. v. Otter Products, LLC 280 F.Supp.3d 287 (D. Mass. 2017), Judge Patti B. Saris ruled that "although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in [the District of Massachusetts]." Otter Prods., 280 F.Supp.3d at 294. This satisfies Due Process because the harm – the barred access to the website – occurred here." Otter Prods., 280 F.Supp.3d at 293.

Additionally, in Access Now, Inc. v. Sportswear, Inc., No. 17-cv-11211-NMG, 2018 Dist. LEXIS 47318 (D. Mass. Mar. 22, 2018), Judge Nathaniel M. Gorton stated that the defendant "availed itself of the forum state's economic activities by targeting the residents of the Commonwealth . . . Such targeting evinces a voluntary attempt to appeal to the customer base in the forum." Sportswear, No. 1:17-cv-11211-NMG, 2018 U.S. Dist. LEXIS 47318 at *11. Thus, establishing a customer base in a particular district is sufficient cause for venue placement.

**PARTIES**

15. Plaintiff, is and has been at all relevant times a resident of Bronx County, State of New York.

16. Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq., the New York State Human Rights Law and the New York City Human Rights Law. Plaintiff, LUNIQUE AGOSTINI, cannot use a computer without the assistance of screen reader software. Plaintiff has been denied the full enjoyment of the facilities, goods and services of Stance.com as a result of accessibility barriers on Stance.com.

17. Defendant, Stance, Inc., is a Delaware Corporation doing business in this State with its principal place of business located at 197 Avenida La Pata, San Clemente, CA 92673 and its agent address at 160 Greentree Drive, Suite 101, Dover, DE 19904.

18. Stance provides to the public a website known as Stance.com which provides consumers with access to an array of goods and services, including, the ability to view a wide selection of socks and apparel, including T-shirts, sweatshirts, hoodies, jackets, pants, shorts, boxers, caps. Consumers across the United States use Defendant's website to purchase high-quality socks, apparel and accessories. Defendant's website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). See Victor Andrews v. Blick Art Materials, LLC, No. 17-cv-767, 2017 WL 3278898 (E.D.N.Y. August 1, 2017). The inaccessibility of Stance.com has deterred Plaintiff from making an online purchase of socks.

## NATURE OF THE CASE

19. The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

20. The blind access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products and services contained therein.

21. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind user is unable to access the same content available to sighted users.

22. Blind users of Apple macOS operating system-enabled computers and devices have a built-in screen-reading software program available to them. "VoiceOver" is one of the most popular screen-reading software programs available for blind computer users.

23. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible. Many Courts have also established WCAG 2.2 as the standard guideline for accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including but not limited to: adding invisible alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that blind persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader. Websites need to be accessible to the "least sophisticated" user of screen-reading software and need to be able to work with all browsers. Websites need to be continually updated and maintained to ensure that they remain fully accessible.

## **FACTUAL ALLEGATIONS**

24.  Defendant controls and operates Stance.com in New York State and throughout the United States.

25.  Stance.com is a commercial website that offers products and services for online sale. The online store allows the user to view socks, apparel and accessories, make purchases, and perform a variety of other functions.

26.  Among the features offered by Stance.com are the following:

> a) Consumers may use the website to connect with Stance, Inc. on various social media platforms, including Instagram, Twitter, Facebook, YouTube, TikTok, and Pinterest;
>
> b) An online store, allowing customers to purchase view a wide selection of socks and apparel, including T-shirts, sweatshirts, hoodies, jackets, pants, shorts, boxers, caps, water bottles, and purchase gift cards and other products for delivery to their doorsteps, and;
>
> c) Learning about shipping and return policies, reading customer reviews, and learning about the company, amongst other features.

27.  This case arises out of Stance's policy and practice of denying the blind access to the goods and services offered by Stance.com. Due to Stance's failure and refusal to remove access barriers to Stance.com, blind individuals have been and are being denied equal access to Stance, as well as to the numerous goods, services and benefits offered to the public through Stance.com.

28.  Stance denies the blind access to goods, services and information made available through Stance.com by preventing them from freely navigating Stance.com.

29. Stance.com contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen-reading software. These barriers are pervasive and include, but are not limited to: inaccurate heading hierarchy, ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, inaccurate alt-text on graphics, inaccessible drop-down menus, redundant links where adjacent links go to the same URL address, and the requirement that transactions be performed solely with a mouse.

30. Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that a screen-reader can speak the alternative text while sighted users see the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on Stance.com that lack a text equivalent. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics (screen-readers detect and vocalize alt-text to provide a description of the image to a blind computer user). As a result, Plaintiff and blind Stance.com customers are unable to determine what is on the website, browse the website or investigate and/or make purchases.

31. Stance.com also lacks prompting information and accommodations necessary to allow blind shoppers who use screen-readers to locate and accurately fill-out online forms. Due to lack of adequate labeling, Plaintiff and blind customers cannot make purchases or inquiries as to Defendant's merchandise, nor can they enter their personal identification and financial information with confidence and security.

32. When visiting the Website, Plaintiff, using VoiceOver, encountered the following specific accessibility issues:

a)  Plaintiff was confused by the announcement of the constant update of the moving content, caused by the "aria-live" attribute of the carousel region. Plaintiff was disoriented and perceived the unexpected announcement as a change in keyboard focus;

b)  Plaintiff was disoriented when the automatic pop-up window appeared on the web page. Plaintiff, as a legally blind user, had significant difficulty knowing when automatic visual context change had occurred, such as a new window popping up;

c)  The "Skip to content" link was misimplemented on the site. In an attempt to bypass the Navigation menu, Plaintiff could not shift keyboard focus to main content when activating this feature, being forced to tab through all the sub-menu links;

d)  Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content and understand the logical structure of the home page;

e)  The content on the home page was organized into sections with headings, but they were not correctly marked up and did not programmatically identify sections of the page. Plaintiff was deprived of the actual heading structure that was available to sighted customers and could not effectively navigate the content on the home page;

f)  Sub-menu elements with drop-down menus were inaccessible via keyboard. Plaintiff could not interact with sub-menus using "tab" or "arrow" keys. The website had device-specific functionality, like mouse-dependency, making it inaccessible to legally blind users;

g)  The interactive element with "button" functioning was programmatically built using inappropriate tags and did not have the correct "role". Plaintiff received inaccurate

information about the purpose of the element in focus;

h) Several links had ambiguous texts that were unclear to Plaintiff. Lack of detailed description of the link target and destination page made it difficult for Plaintiff to perceive their purpose;

i) Plaintiff tried to follow the links from the website and received no prior warning that the links opened new windows. As a result, Plaintiff unsuccessfully tried to use the "Back" function of the browser to go to the previous page and became disoriented;

j) Links led to other websites and did not indicate that they were external. Plaintiff was disoriented on another website. The link text failed to warn legally blind customers about the significant change of the context;

k) The Filter button with drop-down lists did not announce their state - "collapsed" or "expanded". Plaintiff could not determine in which part of the sub-menu the keyboard focus was located or if the links were skipped;

l) Tabbing through elements did not follow the correct order. Sub-menu links, disconnected from the drop-down menu, were misinterpreted. Plaintiff, unaware of the links' relation to the drop-down, experienced a disordered navigation sequence from the keyboard;

m) Plaintiff was forced to repeatedly tab through elements with the same destination: the link text of products conveyed similar information and led to the same destinations as interactive images above the links;

n) Different images of the same product had similar and poorly descriptive alternative text. Plaintiff could not learn more detailed information about the product and its features;

o) Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

p) Unclear and ambiguous labels for form fields impeded Plaintiff from correct information input. Plaintiff was unaware of the purpose of the interactive element and could not understand what information was required;

q) In an attempt to complete the Checkout form, Plaintiff encountered a warning message that was not announced by the screen reader software. Plaintiff was not informed about any incorrect actions on the stage of filling in the personal information.

Consequently, blind customers are essentially prevented from purchasing any items on Stance.com.

33. Stance.com requires the use of a mouse to complete a transaction. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, Stance.com's inaccessible design, which requires the use of a mouse to complete a transaction, denies Plaintiff and blind customers the ability to independently navigate and/or make purchases on Stance.com.

34. Due to Stance.com's inaccessibility, Plaintiff and blind customers must in turn spend time, energy, and/or money to make their purchases at traditional brick-and mortar retailers. Some blind customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if Stance.com was accessible, a blind person could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 3.2.1 "On Focus", functionality of the components should be predictable as customers

navigate their way through the website. Plaintiff encountered numerous obstacles on Stance.com automatic pop-ups and links that open new windows without prior warning. These obstacles can significantly disorient legally blind customers. Plaintiff had difficulty in determining when the automatic change in visual context occurred on the website. Thus, Stance has inaccessible design that deprives the Plaintiff and blind customers of the opportunity to make purchases on Stance.com on their own.

35. Stance.com thus contains access barriers which deny the full and equal access to Plaintiff, who would otherwise use Stance.com and who would otherwise be able to fully and equally enjoy the benefits and services of Stance.com in New York State and throughout the United States.

36. Plaintiff, LUNIQUE AGOSTINI, has made an attempt to visit and use Stance.com. On November 12, 2024, the Plaintiff searched online for a store specializing in fitted socks to find a wide variety of high-quality designs and categories for herself and her family, planning to include them in seasonal gift boxes. While exploring the website, Plaintiff encountered several accessibility issues that hindered her ability to navigate and use the site effectively. These issues included content that moved continuously and made unexpected announcements, causing disorientation, as well as an inability to expand the navigation submenus and efficiently browse the site. Additionally, the "Skip to content" feature was not functioning, forcing her to manually navigate through all the elements on every page. These accessibility barriers prevented her from obtaining information about store locations or completing a purchase online, making Stance.com inaccessible and not independently usable for blind and visually impaired users. Despite these challenges, the Plaintiff enjoyed the Defendant's offerings and would still like to visit their physical store location in person.

37. Moreover, Plaintiff will visit the website again immediately upon Defendant correcting the numerous accessibility barriers on it. Plaintiff intends to visit Defendant's retail store located at 500 West 33rd Street, Suite RU221, New York, NY 10001, renowned for offering premium socks, underwear, and apparel with unique designs. Visiting this physical location would allow Plaintiff to try on products to ensure proper fit and comfort, and consult with staff regarding gift customization options.

38. As described above, Plaintiff has actual knowledge of the fact that Defendant's website, Stance.com, contains access barriers causing the website to be inaccessible, and not independently usable by, blind and visually-impaired persons.

39. These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of Stance.com.

40. Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

   (a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

   (b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

   (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

41. Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

42. Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits and services of Stance.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

## **CLASS ACTION ALLEGATIONS**

43. Plaintiff, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access Stance.com and as a result have been denied access to the enjoyment of goods and services offered by Stance.com, during the relevant statutory period."

44. Plaintiff seeks certification of the following New York subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access Stance.com and as a result have been denied access to the enjoyment of goods and services offered by Stance.com, during the relevant statutory period."

45. There are hundreds of thousands of visually-impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually-impaired. Id. Thus, the persons in the class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

46. This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of Stance.com. Due to Defendant's policy

and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse, select and shop on Stance.com.

47. There are common questions of law and fact common to the class, including without limitation, the following:

   (a) Whether Stance.com is a "public accommodation" under the ADA;

   (b) Whether Stance.com is a "place or provider of public accommodation" under the laws of New York;

   (c) Whether Defendant, through its website, Stance.com, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

   (d) Whether Defendant, through its website, Stance.com, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the law of New York.

48. The claims of the named Plaintiff are typical of those of the class. The class, similar to the Plaintiff, is severely visually-impaired or otherwise blind, and claims Stance has violated the ADA, and/or the laws of New York by failing to update or remove access barriers on their website, Stance.com, so it can be independently accessible to the class of people who are legally blind.

49. Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the

class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

50. Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

51. Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

52. References to Plaintiff shall be deemed to include the named Plaintiff and each member of the class, unless otherwise indicated.

## FIRST CAUSE OF ACTION

*(Violation of 42 U.S.C. §§ 12181 et seq. – Title III of the Americans with Disabilities Act)*

53. Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

54. Title III of the American with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods

of administration that have the effect of discriminating on the basis of disability." 42 U.S.C.
§ 12181(b)(2)(D)(I).

55. Stance.com is a sales establishment and public accommodation within the definition of 42 U.S.C.
§§ 12181(7).

56. Defendant is subject to Title III of the ADA because it owns and operates Stance.com.

57. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny
individuals with disabilities or a class of individuals with disabilities the opportunity to participate
in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an
entity.

58. Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny
individuals with disabilities or a class of individuals with disabilities an opportunity to participate
in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which
is equal to the opportunities afforded to other individuals.

59. Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination
includes, among other things, "a failure to make reasonable modifications in policies, practices, or
procedures, when such modifications are necessary to afford such goods, services, facilities,
privileges, advantages, or accommodations to individuals with disabilities, unless the entity can
demonstrate that making such modifications would fundamentally alter the nature of such goods,
services, facilities, privileges, advantages or accommodations."

60. In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination
also includes, among other things, "a failure to take such steps as may be necessary to ensure that

no individual with disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

61. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and accessible alt-text. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

62. The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Stance who are blind have been denied full and equal access to Stance.com, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

63. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

64. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or

opportunities of Stance.com in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

65. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

66. The actions of Defendant were and are in violation of the ADA, and therefore Plaintiff invokes her statutory right to injunctive relief to remedy the discrimination.

67. Plaintiff is also entitled to reasonable attorneys' fees and costs.

68. Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

*(Violation of New York State Human Rights Law, N.Y. Exec. Law Article 15 (Executive Law § 292 et seq.))*

69. Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

70. N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

71. Stance.com is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9).

72. Defendant is subject to the New York Human Rights Law because it owns and operates Stance.com. Defendant is a person within the meaning of N.Y. Exec. Law. § 292(1).

73. Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to Stance.com, causing Stance.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons the full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

74.  Specifically, under N.Y. Exec. Law § unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

75. In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

76. There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

77. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exec. Law § 296(2) in that Defendant has:

      (a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      (b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      (c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

78. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

79. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Stance.com under N.Y. Exec. Law § 296(2) et seq. and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

80. The actions of Defendant were and are in violation of the New York State Human Rights Law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

81. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exec. Law § 297(4)(c) et seq. for each and every offense.

82. Plaintiff is also entitled to reasonable attorneys' fees and costs.

83. Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION

*(Violation of New York State Civil Rights Law,*
*NY CLS Civ R, Article 4 (CLS Civ R § 40 et seq.))*

84. Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

85. Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

86. N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities, and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

87. N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the

exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

88.   Stance.com is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40-c(2).

89.   Defendant is subject to New York Civil Rights Law because it owns and operates Stance.com. Defendant is a person within the meaning of N.Y. Civil Law § 40-c(2).

90.   Defendant is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to Stance.com, causing Stance.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

91.   There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their website accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed by using a keyboard. Incorporating the basic components to make their website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

92.   In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

93. Specifically, under N.Y. Civil Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . ."

94. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

95. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 et seq. and/or its implementing regulations.

96. Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Rights Law § 40 et seq. for each and every offense.

## FOURTH CAUSE OF ACTION
*(Violation of New York City Human Rights Law,*
*N.Y.C. Administrative Code § 8-102, et seq.)*

97. Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

98. N.Y.C. Administrative Code § 8-107(4)(a) provides that "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly

or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

99. Stance.com is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9).

100. Defendant is subject to City Law because it owns and operates Stance.com. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

101. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Stance.com, causing Stance.com to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 et seq.] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8107(15)(a).

102. Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

> (a) constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

103. Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

104. As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Stance.com under N.Y.C. Administrative Code § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

105. The actions of Defendant were and are in violation of City law and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

106. Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

107. Plaintiff is also entitled to reasonable attorneys' fees and costs.

108. Pursuant to N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

*(Declaratory Relief)*

109. Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

110. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that Stance.com contains access barriers denying blind customers the full and equal access to the goods, services and facilities of Stance.com, which Stance owns, operates and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the American with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq. prohibiting discrimination against the blind.

111. A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against the Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website, Stance.com, into full compliance with the requirements

set forth in the ADA, and its implementing regulations, so that Stance.com is readily accessible to and usable by blind individuals;

c) A declaration that Defendant owns, maintains and/or operates its website, Stance.com, in a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y. Exec. Law § 296, et seq., and N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e) An order directing Defendants to continually update and maintain its website to ensure that it remains fully accessible to and usable by the visually-impaired;

f) Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of their civil rights under New York State Human Rights Law and City Law;

g) Plaintiff's reasonable attorneys' fees, expenses, and costs of suit as provided by state and federal law;

h) For pre- and post-judgment interest to the extent permitted by law; and

i) For such other and further relief which this court deems just and proper.

Dated: Manhasset, NY

November 26, 2024

GABRIEL A. LEVY, P.C.
*Attorney for Plaintiff*

**<u>/s/ Gabriel A. Levy, Esq.</u>**

By: GABRIEL A. LEVY, ESQ (5488655)
    1129 Northern Blvd, Suite 404
    Manhasset, NY 11030
    Tel: +1 347-941-4715
    Email: Glevyfirm@gmail.com